No. 25-___

# United States Court of Appeals
# for the Federal Circuit

———————————

IN RE SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,

*Petitioners.*

———————————

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas,
Case No. 2:24-cv-49
The Honorable Rodney Gilstrap

———————————

## PETITION FOR A WRIT OF MANDAMUS

———————————

EVAN MANN
MUNGER, TOLLES & OLSON LLP
560 Mission Street
27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000

GINGER D. ANDERS
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100
Email: ginger.anders@mto.com

*Counsel for Samsung Electronics Co., Ltd.
and Samsung Electronics America, Inc.*

May 7, 2025

# CERTIFICATE OF INTEREST

Counsel for Petitioners certifies the following:

1.   The full name of every party represented by me is:

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

2.   The names of the real parties in interest represented by me are:

None other than Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

3.   All parent corporations and any publicly held companies that own 10% or more of stock in the parties represented by me are:

Samsung Electronics Co., Ltd.

4.   The names of all law firms and the partners or associates that appeared for the parties now represented by me before the originating court or that are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

**O'Melveny & Myers LLP**: Darin W. Snyder; Luann L. Simmons; Mark Liang; Bill Trac; Xin-Yi Zhou; Stacy Yae; Paige Hardy; Marc J. Pensabene; Carson G. Cole; Kyla Butler; Li Guo; Laura B. Gore; Hyun Min Han

**Gillam & Smith LLP**: Melissa Smith

**Mann, Tindel, Thompson**: G. Blake Thompson

5.   The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal is:

None.

6.   Organizational Victims and Bankruptcy Cases:  Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c)

i

(bankruptcy case debtors and trustees) are not applicable because this is not a criminal or bankruptcy case.  See Fed. Cir. R. 47.4(a)(6).

N/A

DATED:  May 7, 2025                    By: */s/ Ginger D. Anders*

                                       Ginger D. Anders

# TABLE OF CONTENTS

**Page**

RELIEF SOUGHT ........................................................................... 1

INTRODUCTION .......................................................................... 1

ISSUE PRESENTED ...................................................................... 4

STATEMENT OF FACTS .............................................................. 4

REASONS WHY THE WRIT SHOULD ISSUE ........................... 13

I.  This Case Could Have Been Brought in NDCA ............................ 15

  A.  Samsung Has a Regular and Established Place of
      Business in NDCA ................................................................ 16

  B.  Alleged Acts of Infringement Occurred in NDCA ................. 19

II.  The Convenience Factors Show That NDCA Is a Clearly
     More Convenient Forum ......................................................... 21

  A.  The Availability of Compulsory Process Strongly
      Favors Transfer .................................................................... 21

  B.  NDCA Is Far More Convenient for Willing Witnesses ........ 26

  C.  Sources of Proof Are More Accessible in NDCA ................... 31

  D.  NDCA Has a Clearly Stronger Local Interest ...................... 35

  E.  The Remaining Convenience Factors Confirm That
      Transfer Is Warranted .......................................................... 39

III.  Taken Together, the Convenience Factors Require That This
      Case Be Transferred to NDCA ................................................ 40

CONCLUSION ............................................................................. 41

CERTIFICATE OF COMPLIANCE ............................................. 43

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*In re Apple Inc.*,
2021 WL 5291804 (Fed. Cir. Nov. 15, 2021)................................. 22, 23

*In re Apple Inc.*,
2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ...................................... 35

*In re Apple Inc.*,
2022 WL 1676400 (Fed. Cir. May 26, 2022) ...................................... 36

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ................................................. 3, passim

*In re Atlassian Corp.*,
2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ......................... 26, passim

*Axonics, Inc. v. Medtronic, Inc.*,
75 F.4th 1374 (Fed. Cir. 2023)............................................................ 19

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ............................................................... 35

*In re Cordis Corp.*,
769 F.2d 733 (Fed. Cir. 1985) ............................................................ 18

*Dept. of Com. v. New York*,
588 U.S. 752 (2019).......................................................................... 21

*In re DISH Network LLC*,
2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)...................................... 40

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ................................................. 2, passim

*In re Google LLC*,
2021 WL 5292267 (Fed. Cir. Nov. 15, 2021)................................. 32, 33

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Google LLC*,
2022 WL 1613192 (Fed. Cir. May 23, 2022) ........................... 1, passim

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023)................................. 13, 31, 40

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) ........................................... 18

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ...................................... 36, 39

*In re HP Inc.*,
2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...................................... 24

*In re Juniper Networks*,
14 F.4th 1313 (Fed. Cir. 2021)......................................... 32, 35, 36, 37

*In re Netflix, Inc.*,
2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ......................................... 25

*In re Pandora Media, LLC*,
2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)...................................... 40

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021).................................. 2, passim

*In re Samsung Elecs. Co.*,
2023 WL 8642711 (Fed. Cir. Dec. 14, 2023) ........................... 1, passim

*In re SAP Am.*,
133 F.4th 1370 (Fed. Cir. 2025)......................................... 24

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) .................................. 3, passim

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*United States v. Rodriguez*,
    15 F.3d 408 (5th Cir. 1994).................................................................... 18

*Vais Arms, Inc. v. Vais*,
    383 F.3d 287 (5th Cir. 2004)................................................................. 19

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008)........................................................ 14, 25

*Zurich Am. Ins. Co. v. Arch Ins. Co.*,
    20 F.4th 250 (5th Cir. 2021) .............................................................. 21

**STATUTES**

28 U.S.C. § 1391(c)(3) .......................................................................... 8, 15

28 U.S.C. § 1400(b) ........................................................................ 8, 15, 17

28 U.S.C. § 1404(a) ........................................................................... 14, 16

**RELIEF SOUGHT**

Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") respectfully request that this Court issue a writ of mandamus to the U.S. District Court for the Eastern District of Texas ("EDTX") directing the district court to vacate its order denying Samsung's motion to transfer and directing the court to transfer the case to the U.S. District Court for the Northern District of California ("NDCA").

**INTRODUCTION**

The district court refused to transfer this case to NDCA, where it clearly belongs, based primarily on two significant legal errors that fly in the face of binding precedent.

First, the court concluded that Samsung had not established that this case could have been brought in NDCA—even though Samsung established that it maintains a 385,000 square-foot campus in NDCA where over 200 regular, full-time employees are based, and even though this Court has recently and repeatedly ordered that cases against Samsung be transferred to NDCA. *See, e.g.*, *In re Samsung Elecs. Co.*, 2023 WL 8642711 (Fed. Cir. Dec. 14, 2023); *In re Google LLC*, 2022 WL

1613192 (Fed. Cir. May 23, 2022); *In re Samsung Elecs. Co.*, 2 F.4th 1371 (Fed. Cir. 2021).  The court was able to reach that conclusion only by imposing evidentiary hurdles that lack any basis in the venue statute or precedent.

Second, the court held that even though Google-developed functionalities running on Samsung devices are accused in connection with at least six of the eight asserted patents, Google's witnesses and evidence were largely irrelevant and should be given virtually no weight in the transfer analysis.  The district court based those conclusions on the unsupported—and unsupportable—assumption that those witnesses and evidence would not be *important* at trial.  But this Court has repeatedly held that district courts abuse their discretion by discounting relevant witnesses and sources of proof based on nothing more than uncertainty that they will play an important role at trial.  *See, e.g.*, *In re Genentech, Inc.*, 566 F.3d 1338, 1343-44 (Fed. Cir. 2009).

Those fundamental errors permeated the district court's assessment of the convenience-transfer factors.  Although nearly every third-party witness is located in NDCA—and none are in EDTX—the court held that the availability of compulsory process was neutral based

on the improper assumption that identified prior artists would not testify at trial. *Contra, e.g.*, *Genentech*, 566 F.3d at 1345. Although NDCA is clearly more convenient for the eleven Google technical witnesses based in NDCA and at least three Samsung technical witnesses based in Korea, while only two non-technical witnesses are based in EDTX, the court discounted Google's witnesses and found that the convenience of willing witnesses favored transfer only slightly. *Contra, e.g.*, *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023). Although sources of proof relevant to the Google-developed functionalities central to this case are in NDCA, and only damages-related documents are in EDTX, the court discounted Google's technical evidence and improperly "overemphasiz[ed]" the damages-related documents in finding the sources-of-proof factor neutral. *Contra In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). And although the development of the accused technologies by Google and Samsung took place entirely in NDCA and Korea, respectively, the court held that EDTX had a greater local interest after erroneously deeming Google's development of two of three accused functionalities categorically irrelevant to the local-interest analysis. *Contra, e.g.*, *id*. at 1339-40.

Because, as in other Samsung cases involving Google technology, "Google's accused functionalit[ies]" are "at the center" of Mullen's allegations, the "events giving rise to" this suit occurred in NDCA. *Google*, 2022 WL 1613192, at *3-*4. That is "clearly the more convenient forum." *Id.* at *3. The district court plainly abused its discretion in concluding otherwise, and mandamus is warranted.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in refusing to transfer this case to NDCA.

## STATEMENT OF FACTS

### I.    The Parties

Plaintiff Mullen Industries LLC ("Mullen") brought this suit in EDTX, alleging that Samsung infringes nine patents.  Mullen, a Delaware LLC, has no connection to EDTX.  *See* Appx0213.  Its CEO—the sole named inventor of the asserted patents—resides in Pittsburgh, PA.  Appx0153.

SEC is a Korean corporation with its principal place of business in Korea.  Appx0135-0136.  SEA is a wholly owned subsidiary of SEC and a New York corporation with its principal place of business in New Jersey.

4

Appx0141.   SEA commercializes, markets, and sells Samsung phones, tablets, and watches throughout the United States, including in NDCA. Appx0141.   To support those efforts, SEA maintains corporate offices in various U.S. cities, including in EDTX and NDCA.   Appx0141.   Among those offices is a 385,000 square-foot campus in Mountain View, CA (in NDCA), with over 200 regular, full-time employees.    Appx0141; Appx0550.

## II.   The Instant Suit

### A.    Mullen's Allegations

In January 2024, Mullen sued Samsung in EDTX, alleging that Samsung infringed nine patents.  Appx0030.  Mullen later amended the complaint, such that it now asserts infringement as to only eight patents. Appx0209.

The patents-in-suit relate to mobile electronic devices.  Appx0210-0211; Appx0216-0217.   Seven concern location services, and another concerns notifications on wearable devices.  *Id.*  Mullen accuses Samsung of infringing those patents through the operation of three types of software installed on some Samsung phones, tablets, and watches:

Google Maps, the Google-developed Wear OS, and SmartThings Find ("STF").  Appx0002; Appx0209.

## B.    The Accused Functionalities and Relevant Witnesses

*Google Maps and Wear OS.*  Two of the accused technologies—Google Maps and Wear OS—were designed and developed by Google, primarily in NDCA.  Appx0137; Appx0141; Appx0149.  The Google engineering teams that develop and maintain the accused functionalities—location sharing for Google Maps and notification features for Wear OS—are primarily in NDCA.  *See* Appx0144-0146; Appx0149-0151.  At least eleven Google witnesses with relevant technical knowledge are based in NDCA.  *See id.*  No relevant Google employees live or work in EDTX.  Appx0144; Appx0151.

No Samsung employees design or develop Google Maps, and none have access to proprietary documents or source code for Google Maps.  Appx0137-0138; Appx0141.  The SEC employees who manage Samsung's relationship with Google concerning Google Maps are in Korea.  Appx0136-0137.

SEC employees in Korea adapt Wear OS for use in Samsung watches.  *See* Appx0137.  Any design documents and source code related

6

to Samsung's adapted version are in Korea.  Appx0137-0138; Appx0141.

Although Mullen alleges that certain notification functions performed by

Wear OS on Samsung watches infringe one of its patents, the "application

programming interfaces" for "event notifications" are included in a

software package provided by Google.  Appx0137.

*SmartThings Find.*  STF similarly has no material connection to

EDTX.  STF was originally designed and developed by SEC as an

application called "Find My Mobile."  Appx0136.  That application was

integrated into the "SmartThings" platform, which was originally

developed by SmartThings, Inc., a company based in NDCA that

Samsung acquired in 2014 and that continues to operate as a wholly

owned subsidiary of SEA.  Appx0136.  SmartThings, Inc. has several

dozen employees in Mountain View and no office in EDTX.  Appx0136.

The Samsung employees responsible for designing and developing STF

are located in Korea; none are in EDTX.  Appx0136-0391; Appx0137.

Accordingly, there are no design documents or source code concerning

STF in EDTX.  Appx0138; Appx0141.

*Financials and Marketing*.  Some SEA employees, including two identified as potential witnesses in this case, maintain financial and marketing documents in EDTX.  *See* Appx0205.

*Prior Art*.  Several prior art references disclose the same general subject matter as seven of the asserted patents (i.e., access to location information by mobile device users).  *See* Appx0155.  The inventors of those references are all located in NDCA and elsewhere in California.  *See* Appx0163.

## III.  Samsung's Transfer Motion

### A.    The Parties' Briefing

Because this suit has virtually no connection to EDTX, and because the relevant witnesses and evidence are concentrated in NDCA and Korea, Samsung moved to transfer venue for convenience.  Appx0113.  Samsung argued first that the case could have been brought in NDCA because SEA has a regular and established place of business in that district—namely, offices with over 200 regular full-time employees—and SEC, as a foreign corporation, can be sued in any judicial district.  Appx0123 (citing 28 U.S.C. §§ 1391(c)(3), 1400(b)).  Samsung further argued that the convenience factors strongly favored transfer because

witnesses and sources of proof are overwhelmingly located in NDCA (or Korea, which is closer to NDCA than to EDTX), and NDCA has the stronger local interest.  Appx0123-0129.

Mullen opposed, arguing first that Samsung had failed to establish that it has offices in NDCA, primarily because Samsung did not provide a street address for its facility.   Appx0185.   With respect to the convenience factors, Mullen did not dispute the case's strong connection to NDCA, but argued that a few witnesses and documents related to damages, product testing, and the "Internet of Things" ("IoT")—not an accused product in this case—are located in EDTX.  Appx0186-0194.

In reply, Samsung maintained that its initial argument as to venue was sufficient, but also supplemented that argument with additional exhibits it had produced to Mullen in venue discovery after filing its motion.  Those exhibits confirmed the street addresses of SEA's 385,000 square-foot campus in Mountain View.  Appx0536.

In its surreply, Mullen urged the court to ignore Samsung's reply statements regarding venue.  Appx0573.  And although Mullen did not dispute that its proposed EDTX witnesses lacked relevant technical knowledge, it maintained that a handful of SEA employees in EDTX

could have relevant information concerning testing and damages. Appx0576-0577.

## B.    The District Court's Denial of Samsung's Motion

On March 25, 2025, the district court denied Samsung's motion to transfer. The court held first that Samsung had failed to show that the suit could have been brought in NDCA. Appx0003-0005. The court found that although Samsung had submitted a declaration with its opening brief stating that SEA has "several facilities throughout California, including the NDCA" and "employs over 600 regular full-time employees in California," including over "200 employees in Mountain View," Samsung had "fail[ed] to support this allegation with evidence of these facilities' addresses or support that [Samsung] operates a regular and established place of business at these unidentified facilities." Appx0004. The court refused to consider the fact that Samsung had provided the facilities' addresses in its reply brief, holding that Samsung was prohibited from introducing "new evidence" at that stage. Appx0004-0005. The court further faulted Samsung for failing to state that it had committed alleged acts of infringement in NDCA—even though Mullen did not dispute that issue. Appx0005.

The court then turned to the convenience factors and ultimately concluded that Samsung had failed to demonstrate that NDCA would be a more convenient forum. Appx0005-0019.

*Compulsory Process.* The court held that the availability of compulsory process was neutral. Appx0009-0013. The court ruled that although Samsung had identified eleven nonparty Google engineers in NDCA and seven prior artists in and near NDCA, Samsung had failed to show that it would seek the testimony of those witnesses. Appx0010-0011. The court also held that the Google witnesses were not unwilling. Appx0011-0012.

*Willing Witnesses.* The district court found that the cost of attendance for willing witnesses slightly favored transfer. Appx0013-0015. The court significantly discounted the relevance of the eleven Google witnesses involved in the development and design of Google Maps and Wear OS, asserting that witnesses with knowledge of Google Maps were unimportant because Google Maps is "only one of the [three] accused features in this case," and that witnesses with knowledge of Wear OS were entirely irrelevant because Samsung adapted Wear OS for use with its products. Appx0014. The court then counted in EDTX's

favor a couple Samsung witnesses with knowledge only as to marketing and testing.  Appx0014.

*Sources of Proof.*  The court held that the relative ease of access to proof weighed slightly against transfer.  Appx0006-0009.  The court placed "minimal weight" on Google's documents in NDCA, deeming them relevant only as to Mullen's claims against Samsung's devices with Google Maps technology.  Appx0007-0008.  The court then declined to address whether technical documents in NDCA would be more or less relevant than the "damages-related documents" Mullen identified in EDTX.  Appx0008.  The court further ruled that Samsung had not shown that the prior artists had information regarding their prior art or that the prior art was relevant.  Appx0008-0009.

*Local Interest.*  The court held that EDTX's interest in this case outweighed NDCA's.  Appx0017-0018.  The court based that conclusion on a comparison of Samsung's "presence" in each district, holding that Samsung maintains an office in EDTX and that Samsung had failed to show that it "maintains a significant presence in" NDCA.  Appx0017.  The court further disregarded the design and development in NDCA of two accused functionalities on the ground that actions taken by third parties

like Google are categorically irrelevant in the local-interest analysis. Appx0017-0018.

*Other Factors.* The court held that the factors addressing court congestion, familiarity with patent law, and avoidance of conflict of laws were neutral. Appx0016, 0018.

## REASONS WHY THE WRIT SHOULD ISSUE

Mandamus relief is available to "correct a clear abuse of discretion or usurpation of judicial power." *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020). A petitioner seeking mandamus relief must show a "clear and indisputable" right to the writ; have "no other adequate method of attaining the desired relief"; and demonstrate that "the writ is appropriate under the circumstances." *Id.* For mandamus petitions challenging a failure to transfer for convenience, this three-part test "reduces to the first factor" because an appeal following a final judgment is not an adequate alternative and an erroneous failure to transfer may result in irreparable procedural injury. *Id.* at 1336-37.

This Court follows regional-circuit standards governing transfer-for-convenience motions—here, the Fifth Circuit's standards. *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023). After ensuring that a

suit "might have been brought" in the proposed transferee venue, the Fifth Circuit analyzes private and public interest factors to compare the relative convenience of the forums. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (quoting 28 U.S.C. § 1404(a)). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315 (citation omitted). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citation omitted). A case should be transferred when the movant has shown that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*

Samsung has a clear and indisputable right to the writ. This case undoubtedly could have been brought in NDCA, as Samsung's opening brief and supporting declaration made plain. Whether the case should

be transferred thus turns on the convenience factors, which point in only one direction: NDCA. The compulsory-process and willing-witnesses factors overwhelmingly favor transfer, as the witnesses with technical knowledge regarding the accused products are located in NDCA or Korea, and none are located in EDTX. The relevant documents and sources of proof are mostly maintained in NDCA and Korea. NDCA has a far stronger local interest in this case than EDTX. And the remaining factors are neutral, making the case for transfer wholly one-sided. Mandamus is therefore warranted.

## I.    This Case Could Have Been Brought in NDCA

The district court's conclusion that Samsung failed to show that this case could have been brought in NDCA represents a clear abuse of discretion. It could not be plainer that SEA has a regular and established place of business in NDCA: it has a 385,000 square-foot campus that hosts over 200 employees.[1] And Mullen did not dispute that alleged acts of infringement occurred in NDCA. The parties' briefing thus established all that is necessary under 28 U.S.C. § 1400(b). Indeed, Samsung's

---

[1] SEC is a foreign corporation, and suits against foreign entities are proper in any judicial district. 28 U.S.C. § 1391(c)(3).

amenability to venue in NDCA is well established, as this Court has recently and repeatedly ordered the transfer of cases against Samsung to NDCA. *See, e.g.*, *In re Samsung Elecs. Co.*, 2023 WL 8642711, at *3 (Fed. Cir. Dec. 14, 2023); *In re Google LLC*, 2022 WL 1613192, at *5 (Fed. Cir. May 23, 2022); *Samsung*, 2 F.4th at 1381. In reaching its contrary conclusion, the district court imposed a new "street address" requirement that has no basis in precedent, and then refused to consider Samsung's NDCA street address once Samsung proffered it in its reply. In so doing, the district court distorted Section 1404(a)'s proper-venue requirement— a straightforward inquiry designed simply to ensure that a case is not transferred to a district in which it could not have been brought—into an artificial means for keeping a case in a district in which it should not have been brought.

### A. Samsung Has a Regular and Established Place of Business in NDCA

Samsung clearly met its burden to show a regular and established place of business in NDCA. In its opening brief, Samsung explained that "SEA has offices with over 200 regular full-time employees in the NDCA." Appx0123. The accompanying citation referred to the declaration of Colm Malone, Vice President of R&D Project Management at SEA, who

16

stated that "SEA has several facilities throughout California, including the NDCA, and employs over 600 regular full-time employees in California," including "over 200 employees in Mountain View, California." Appx0141. After Mullen objected that Samsung had not identified the "address" of such offices or clarified that the offices belonged to Samsung, Appx0185, Samsung responded by citing SEA's office list—which had already been produced to Mullen in venue discovery—identifying SEA's 385,000 square-foot campus at 645 and 665 Clyde Avenue in Mountain View. Appx0536.

The district court's assertion that Samsung nevertheless failed to establish a regular and established place of business fails for two primary reasons. First, the court apparently considered Samsung's opening brief insufficient because Samsung did not provide addresses or otherwise "support that [SEA] operates a regular and established place of business." Appx0004. But there is no address requirement. Section 1400(b) does not contain one. And this Court's longstanding precedent is inconsistent with any such requirement. A defendant may have a "regular and established place of business" in a district despite lacking a "fixed physical presence in the sense of a formal office or store"—meaning

that *the defendant need not proffer a street address to establish a regular place of business. In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). Rather, a defendant need only proffer evidence of a "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). The Malone declaration did just that, describing SEA's "facilities" in NDCA with more than 200 "regular full-time employees." Appx0141. Samsung thus established what this Court has expressly recognized: SEA employs full-time employees at a regular, established place of business in NDCA. *See Samsung*, 2 F.4th at 1376 n.1 ("[SEA] has offices in the Northern District of California from which more than 300 employees work.").

Second, even if the Malone declaration were insufficient, the district court abused its discretion by disregarding Samsung's reply brief, which clarified the precise street-address issue the district court thought needed clarifying. *See* Appx0536 (providing addresses of SEA's Mountain View facilities). That is what reply briefs are for—responding to a "new point or issue" in an opposition brief. *United States v. Rodriguez*, 15 F.3d 408, 414 n.7 (5th Cir. 1994). And as this Court has held in the context of

18

PTAB proceedings, an adjudicative body abuses its discretion by disregarding a reply brief that properly responds to new issues raised in the opposition brief. *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1380 (Fed. Cir. 2023). Any other rule would confound judicial economy by turning opening briefs into a quixotic exercise in anticipating all possible responsive arguments, no matter how tenuous. Moreover, Mullen cannot "complain that [it] was prejudiced" by any new information in Samsung's reply given that the district court gave Mullen "an adequate opportunity to respond" in a surreply. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004).

## B.    Alleged Acts of Infringement Occurred in NDCA

There is also no doubt that alleged acts of infringement occurred in NDCA. Mullen's complaint alleges that Samsung, a "large technology company," "incorporated the infringing technologies into Samsung's phones, tablets, watches, and servers." Appx0212-0213. The complaint further alleges that SEA is "responsible for the design, manufacture, testing, and sale of Samsung mobile devices, such as phones, tablets, and watches, and related servers, software and applications, in the United States." Appx0214; *see also* Appx0218-0290 (describing Samsung's

19

nationwide efforts to "export[]," "import[]," and "put into use" infringing products). Consistent with those allegations, the Malone declaration stated that "SEA commercializes, markets, and sells Samsung phones, tablets, and watches in the United States, including in the NDCA." Appx0141. Accordingly, Mullen has never disputed that alleged acts of infringement occurred in NDCA.

The district court nevertheless faulted Samsung for failing to "allege that [it has] committed acts of infringement in" NDCA. Appx0005. But Samsung had no need to restate a fact that was apparent from the face of the complaint's allegation that Samsung infringes "around the world [and] in the United States," Appx0214; obvious from the nature of the claims and Samsung's undisputed nationwide distribution activities; unambiguously stated in the Malone declaration, which explains that Samsung sells its devices "in the United States, including in the NDCA," Appx0141; and nowhere disputed by Mullen. Indeed, the notion that Samsung, a nationwide seller of personal devices, sells the relevant devices "in the United States," Appx0214, but somehow has avoided committing alleged acts of infringement in NDCA, strains credulity. *See Dept. of Com. v. New York*, 588 U.S. 752, 785 (2019) (courts

are "not required to exhibit a naiveté from which ordinary citizens are free" (citation omitted)). Samsung was not required to "anticipatorily rebut" such an implausible argument in its opening brief—much less to address in reply an argument that Mullen did not raise. *Zurich Am. Ins. Co. v. Arch Ins. Co.*, 20 F.4th 250, 257 n.3 (5th Cir. 2021) (citation omitted). Contrary to the district court's formalistic conclusion, such a failure "is not a forfeiture," but the orderly progression of litigation. *Id.* The district court abused its discretion by holding otherwise.

## II.    The Convenience Factors Show That NDCA Is a Clearly More Convenient Forum

The district court's conclusion that transfer was unwarranted was patently erroneous. Properly assessed, the most critical factors weigh strongly in favor of transfer, and no factor weighs against.

### A.    The Availability of Compulsory Process Strongly Favors Transfer

Numerous third-party witnesses are located in or near NDCA, and as the district court itself acknowledged, *none* are located in EDTX. Yet the district court held that this factor was neutral. That was a clear abuse of discretion, premised on legal error. This Court has repeatedly held that this factor "weighs strongly in favor of transfer" where, as here,

there are numerous relevant third-party witnesses subject to NDCA's subpoena powers, but none subject to EDTX's. *In re Apple Inc.*, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

1.     Samsung identified two categories of witnesses subject to compulsory process in NDCA.  First, there are seven prior art witnesses in California with knowledge of relevant prior art.  Appx0121-0122; Appx0155; Appx0163.  One particularly salient example is NDCA-based CellPoint Inc., which developed its CellPoint "Finder!" before the asserted patents' priority date—and has already received subpoenas from Samsung.  Second, eleven Google engineers and product managers knowledgeable about the design of the accused features of Google Maps and Wear OS are located in NDCA, and none are in EDTX.  *See* Appx0144-0146; Appx0150-0151.  The district court incorrectly treated those witnesses as willing witnesses who did not need to be subpoenaed. But even accepting that conclusion for purposes of this petition, at least seven third-party witnesses are in or near NDCA.

*No* relevant third-party witnesses are in EDTX.  Stretching to identify any witnesses at all, Mullen offered three EDTX witnesses who

worked on Samsung's IoT platform. Appx0189-0190. But as the district court correctly explained, those witnesses are irrelevant, as Mullen does not accuse IoT of infringement. Appx0012; Appx0546.

2.    Facing that lopsided spread of witnesses, the district court should have held that the compulsory-process factor weighs heavily in favor of transfer. This Court has so concluded even where the disparity between transferor and transferee district is less stark than it is here. *See Genentech*, 566 F.3d at 1343, 1345 (six third-party witnesses within California, and none in EDTX); *see also, e.g.*, *Google*, 2022 WL 1613192, at *3 (transferee district "clearly more convenient" given five prior artists in NDCA); *Apple*, 2021 WL 5291804, at *3 (factor strongly favors transfer where there are "potential third-party witnesses subject to the subpoena power" in NDCA but not transferor district, and citing "repeated[]" holdings in similar cases).

The district court nonetheless held that the compulsory-process factor was neutral because there was "no way of knowing whether any of these witnesses may be sought for trial testimony." Appx0011. That constitutes clear legal error. As this Court has explained (in yet another case where third-party witnesses were located in NDCA but not EDTX),

23

a district court abuses its discretion by discounting unwilling witnesses simply because "it [is] not clear to the court how many of those witnesses would actually be called to testify and the importance of their testimony." *In re HP Inc.*, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018); *see also In re SAP Am.*, 133 F.4th 1370, 1375 (Fed. Cir. 2025) (similar). A party seeking transfer need only show that "the potential witness has … relevant and material information at this point in the litigation"—that is, it need only "identif[y] witnesses relevant" to topics that "might be issues at trial," such as "infringement" and "invalidity." *Genentech*, 566 F.3d at 1343-44. The defendant need not "affirmatively indicate that it would call those witnesses or [explain] the nature of the testimony they would give." *HP*, 2018 WL 4692486, at *3 & n.1.

In discounting Samsung's seven identified prior artists on relevance grounds, the district court assessed Samsung's evidence under an overly demanding standard that this Court has repeatedly rejected. Appx0011-0012. Samsung unquestionably made the required showing that those witnesses had information "relevant and material" to invalidity: it explained that it had identified those witnesses in preparing its "forthcoming invalidity contentions" (where the prior art authored by

24

those witnesses were ultimately charted); that each prior artist was the author or inventor of references that "disclose[] the same general subject matter as eight of the asserted patents, relating to controlling access to location information among mobile device users"; and that Samsung had already subpoenaed one of the prior artists. Appx0121; Appx0553. The district court never explained how Samsung could have done more to predict those witnesses' testimony long before fact discovery closed. *See* Appx0583-0584. And because the witnesses' potential relevance was "clear from the parties' filings," Samsung had no obligation to submit additional materials "indicating what specific testimony [those witnesses] might offer and why such testimony is relevant or important." *Genentech*, 566 F.3d at 1343-44 (citing *Volkswagen*, 545 F.3d at 317 n.12). In holding Samsung to a standard repeatedly rejected by this Court, the district court clearly abused its discretion. *See In re Netflix, Inc.*, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022) (district court abused discretion by requiring party to do more than identify "individuals knowledgeable about prior art pertaining to invalidity issues").

Properly evaluated, the compulsory-process factor strongly favors transfer. There are seven prior-artist witnesses with relevant

information in and near NDCA, and no third-party witnesses in EDTX.[2]

The district court's conclusion that the compulsory-process factor is nevertheless "neutral" is simply indefensible. *See Google*, 2022 WL 1613192, at *3 (district court abused discretion in not weighing compulsory-process factor in favor of transfer where five prior artists were in NDCA, and no unwilling witnesses were in EDTX).

## B.    NDCA Is Far More Convenient for Willing Witnesses

The district court abused its discretion in concluding that the convenience of willing witnesses only slightly favors transfer. In fact, the convenience of the witnesses—"probably the single most important factor in [the] transfer analysis," *Genentech*, 566 F.3d at 1343 (citation omitted)—strongly favors transfer. Mullen accuses Samsung of committing infringement by "selling devices that run Google's accused

---

[2] The district court erroneously discounted the eleven Google technical witnesses on the ground that they might be "willing." Appx0011. "[W]here, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness." *In re Atlassian Corp.*, 2021 WL 5292268, at *2 (Fed. Cir. Nov. 15, 2021). Even accepting the court's conclusion here, however, the compulsory-process factor weighs strongly in favor of transfer. The Google witnesses—and the district court's erroneous discounting of their relevance—are discussed below, in connection with the willing-witnesses factor.

applications" and using Samsung's own "functionality in conjunction with those applications." *Google*, 2022 WL 1613192, at *1; *see Samsung*, 2 F.4th at 1374. It necessarily follows that both Google's and Samsung's technical witnesses are central to this case. Yet the district court gave only minimal weight to the *eleven* Google engineers and product managers who designed and worked on the accused technology in NDCA, as well as the three identified Samsung technical witnesses in Korea. In so doing, the court relied on presumptions that this Court has repeatedly rejected and that bear no relation to the facts of this case.

    1.    Remarkably, the district court sharply discounted the significance of the eleven NDCA Google witnesses who have direct knowledge of the Google-developed accused functionalities that are central to this case. This Court has held again and again that witnesses "knowledgeable about the design and development of the accused functionality" are "[k]ey" and thus should be carefully considered in the convenience analysis. *Samsung*, 2023 WL 8642711, at *2. Yet the district court held that these witnesses only "slightly" favored transfer based on presumptions this Court has decisively rejected.

The district court did not dispute that the eleven Google witnesses have relevant knowledge of the accused functionalities. Instead, the court discounted the Google witnesses knowledgeable about Google Maps because "Google Maps is only one of the accused features in this case." Appx0014. But that is simply another way of expressing skepticism that the Google Maps witnesses would turn out to be *important* at trial, relative to the rest of the case—when this Court has repeatedly instructed district courts *not* to require such a showing. *See Genentech*, 566 F.3d at 1343-44 (witnesses' convenience should not be discounted based on assumption that their testimony will not be *central* to trial; witnesses need only possess information relevant to issues such as infringement). Because Google Maps is one of three accused products and is alleged to infringe five of the eight asserted patents, *see* Appx0224-0235; Appx0246-0251; Appx0253; Appx0255-0256; Appx0259-0261; Appx0272-05273; Appx0297-0298 (or, in the original complaint, eight of the nine asserted patents, *see* Appx0185), the witnesses knowledgeable about Google Maps unquestionably have "relevant and material information." *Genentech*, 566 F.3d at 1343. That was all that was

necessary to require the court to give the Google Maps witnesses significant weight in the analysis.

The court also erroneously disregarded Google witnesses with knowledge regarding Wear OS. Because Samsung adapts Google's Wear OS software for use in Samsung's Galaxy watches, the court concluded that Google engineers who developed Wear OS were categorically not "relevant." Appx0014. But at this stage of the litigation, the court had no basis for making that assumption. Mullen's allegations are directed to event notifications on Samsung watches running Google's Wear OS software, *see* Appx0014; Appx0188, and the Wear OS software comes to Samsung with existing programming for event notifications, Appx0137. Thus, the court's assertion that Google's Wear OS witnesses have *no* relevant knowledge is pure "conjecture" inconsistent with the record. *Atlassian*, 2021 WL 5292268, at *3. At most, the adapted nature of Wear OS indicates that Samsung witnesses working on the adaptation likely *also* have relevant information—not that the Google engineers who developed Wear OS have none. A court commits an "abuse of discretion" when it relies on assumptions that are "untethered" to evidence in the record. *Id*. at *2.

Turning to Samsung employees, Samsung's technical witnesses in Korea, who have relevant knowledge of the adapted Wear OS software and the third accused functionality, SmartThings Find, also weigh in favor of transfer. "[I]t is indisputable that the Northern District of California is clearly more convenient for [them] than" EDTX. *TikTok*, 85 F.4th at 361 (NDCA clearly more convenient than Texas for witnesses based in China); *see Samsung*, 2023 WL 8642711, at *2 ("Because most of the potential witnesses here are in Korea and NDCA, transfer would greatly reduce the time and inconvenience of travel."). Samsung identified at least three such witnesses. Appx0136-0137.

Thus, eleven Google witnesses in NDCA and three Samsung witnesses in Korea should have weighed strongly in favor of transfer.

2. On the other side of the ledger were two Samsung employees in EDTX whom the district court viewed as "relevant to damages." Appx0014; Appx0205. The court evidently accorded these non-technical witnesses roughly equal weight as the fourteen technical witnesses in NDCA or Korea. That was an abuse of discretion: a few witnesses, with "no technical knowledge of the accused functionality here, 'cannot overcome the immense inconvenience that the majority of relevant

witnesses would face if this case were to be tried in'" EDTX. *Samsung*, 2023 WL 8642711, at *2 (quoting *TikTok*, 85 F.4th at 361). Faced with similar imbalances, this Court has repeatedly held that the willing-witnesses factor weighs *strongly* in favor of transfer. *See, e.g.*, *Google*, 58 F.4th at 1384 (factor weighed "firmly" in favor of transfer where Google identified eleven witnesses in NDCA even if three employees in WDTX had material information); *Atlassian*, 2021 WL 5292268, at *3 (factor favors transfer where witnesses responsible for designing and developing accused functionalities located in NDCA, and WDTX witnesses lacked knowledge regarding the accused functionalities). The district court abused its discretion in concluding otherwise.

## C.  Sources of Proof Are More Accessible in NDCA

The district court abused its discretion in holding that the sources-of-proof factor weighs *against* transfer based on its erroneous refusal to acknowledge the relevance of Google's evidence—even though this case centers on Google-designed functionalities.

The vast majority of the relevant evidence in this case will come from one of two places: Korea or NDCA. Although evidence in Korea does not factor into the sources-of-proof analysis, documents located in NDCA

do.  *In re Juniper Networks*, 14 F.4th 1313, 1321 (Fed. Cir. 2021).

Google's design documents regarding Google Maps and Wear OS were

created and are maintained primarily in NDCA.  Appx0146-0147;

Appx0151; *see also In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir.

Nov. 15, 2021) (sources-of-proof factor depends on "the location of

document custodians and location where documents are created and

maintained").  And because the relevant prior artists are located in or

near NDCA, their documents are more accessible from there as well.  *See*

p. 8, *supra*.

None of the foregoing documents are located in EDTX.  Appx0138;

Appx0141; Appx0146-0147; Appx0151.  Rather, the only potentially

relevant documents in EDTX are Samsung's marketing and sales

documents.  *See* Appx0008.

The district court, however, refused to "meaningfully compare" the

evidence in each district, *Apple*, 979 F.3d at 1340, and instead discounted

all of the evidence in NDCA on legally erroneous bases.  In particular,

the court downplayed Google's technical evidence concerning Google

Maps and Wear OS based on the same reasoning that it used to discount

Google's witnesses with knowledge of those functionalities.  That

reasoning is just as wrong in this context: the court had no record basis to assume that Google's technical evidence would be irrelevant in a case in which two of three accused functionalities were developed by Google. Appx0007-0008; *see* pp. 28-29, *supra*.

The court also assigned no weight to the prior-artist evidence, simply asserting that Samsung had not shown where the evidence was stored or whether it was relevant. Appx0008-0009. But those artists are located in and near NDCA, meaning that their documents are also most accessible there. *See Google LLC*, 2021 WL 5292267, at *2. Indeed, Samsung has already served a document subpoena on a prior artist located in NDCA. Appx0553; Appx0188 (Mullen conceding that subpoenaed evidence might be relevant).

Thus, significant design, development, and prior-art documents are located in NDCA, while unspecified marketing and sales documents are located in EDTX. In a materially identical situation, this Court held that the district court abused its discretion by "overemphasizing the [marketing-related] sources of proof in or nearer to WDTX and failing to meaningfully consider the sources of proof in NDCA." *Apple*, 979 F.3d at 1340. In patent infringement cases, documents concerning the

development of accused products are critically relevant and logically antecedent to evidence of damages. Therefore, when such documents are located in NDCA, a court errs in "failing to meaningfully consider the wealth of important information in NDCA" and assuming that the sources-of-proof factor is "neutral merely because" "revenue and accounting documents" that might be relevant to damages are located in Texas. *Id.* at 1339-40.

Indeed, the district court committed a worse error here: presented with significant technical documents in NDCA and financial or marketing documents in EDTX, the court asserted that the sources-of-proof factor weighed *against* transfer. Appx0009. That conclusion cannot be based on any actual comparison of the sources of proof accessible from NDCA and EDTX, as the court announced that it would not "decide which type of documents are more relevant." Appx0008. The court thus erred by assuming that damages-related documents in EDTX were entitled to *greater* weight than the technical and prior-art documents in NDCA. That conclusion cannot be reconciled with *Apple*. If a court abuses its discretion by assuming that the sources-of-proof factor is neutral in such

a situation, the court a fortiori abuses its discretion by assuming that the factor weighs *against* transfer.

### D.    NDCA Has a Clearly Stronger Local Interest

NDCA has a far stronger interest in this case than EDTX, and the district court's contrary conclusion flouts settled precedent.

The local-interest factor focuses on the connections between the venue and the events that gave rise to the suit. *See Juniper*, 14 F.4th at 1319-20. Courts therefore "look not to the parties' significant connections to each forum … but rather the significant connections between a particular venue and the events that gave rise to a suit." *TikTok*, 85 F.4th at 364 (citation omitted); *see In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) ("We focus on the *events*—not the *parties*."). Accordingly, the location of the "research, design, and development of the accused functionality," *In re Apple Inc.*, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022), is the most important consideration. The district where that work occurred has a strong local interest "because the cause of action calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffman-La Roche Inc.*, 587 F.3d

1333, 1336 (Fed. Cir. 2009); *see also In re Apple Inc.*, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022).

NDCA has a strong local interest because the bulk of the research, design, and development of the accused functionalities occurred there. It is undisputed that the development of the accused location-sharing functionality of Google Maps, and the accused notification functionality of Wear OS, occurred primarily in NDCA, and no development or design occurred in Texas. Appx0144; Appx0149-0150. Moreover, the third product at issue, STF, was developed in Korea, and is part of a larger platform developed by a Samsung subsidiary headquartered in NDCA; again, no development occurred in Texas. Appx0136; Appx0547. That is enough to give NDCA a strong interest in deciding this action, and to tilt the local-interest factor decisively in favor of transfer. *See, e.g.*, *Juniper*, 14 F.4th at 1319-20 (factor favors transfer where "the events forming the basis for [the] infringement claims occurred mainly in the Northern District of California [and] none occurred in the Western District of Texas"); *Samsung*, 2 F.4th at 1380 (similar); *Atlassian*, 2021 WL 5292268, at *3 (similar).

The district court's contrary conclusion rested on two related legal errors. First, the court held that EDTX had the stronger local interest based on its assessment of Samsung's relative *presence* in each district. Appx0017-0018. But the local-interest factor examines the "significant connections between a particular venue and *the events that gave rise to a suit*"—not the *parties'* contacts with the forum. *Juniper*, 14 F.4th at 1320 (citation omitted); *see also id.* (collecting cases); *Samsung*, 2 F.4th at 1380; *TikTok*, 85 F.4th at 364. To be sure, the court observed that Samsung had "tested" "one of the accused functionalities" in EDTX, Appx0017—but the court did not dispute that all three accused functionalities were designed and developed in NDCA or Korea, or suggest that Samsung's testing of *one* functionality somehow gives EDTX a stronger interest in the dispute than NDCA. Had it done so, that too would have been legal error; this Court has squarely rejected such reasoning. *Samsung*, 2 F.4th at 1380 (NDCA had stronger local interest where development "took place largely in Northern California"). In all events, the court ultimately concluded that EDTX had the stronger local interest based on its perception of Samsung's relative "general" presence

37

in each district—which is the wrong analytical framework.[3]  Appx0017; *Apple*, 979 F.3d at 1345.

Second, the district court compounded that error by adopting a new, unjustifiable rule: that "non-parties are irrelevant when determining whether localized interests weigh in favor of transfer."  Appx0017-0018 (citation omitted).  Because the local-interest inquiry focuses on the connection between the forum and the *events* giving rise to the suit, there is no valid reason to discount those events when they involve third parties.  Indeed, this Court has repeatedly held that a district has a strong local interest based on actions taken or products supplied by third parties, including Google.  *See, e.g., Samsung*, 2023 WL 8642711, at \*2 (finding stronger local interest in NDCA based in part on nonparty Google's development of accused products there); *Samsung*, 2 F.4th at 1380 (similar).  That makes sense: if, as in this case, a plaintiff's

---

[3] Making matters worse, the district court's assessment of Samsung's relative presence in each district was based on its erroneous proper-venue analysis.  The court asserted that SEA had admitted that it "maintains an office in" EDTX, but had failed to show that it "maintains a significant presence in" NDCA.  Appx0017.  That is incorrect.  As explained above, Samsung established that it has significant facilities in NDCA, and the district court abused its discretion in refusing to consider their existence.  *See* pp. 15-21, *supra*.

accusations suggest that a third party's designs infringed a patent, those accusations naturally call into question the third party's "work and reputation" in the local forum. *Hoffman-La Roche*, 587 F.3d at 1336. The district court thus committed clear legal error in holding that the local interest factor weighs against transfer. In fact, it strongly favors transfer.

### E.  The Remaining Convenience Factors Confirm That Transfer Is Warranted

The district court correctly held that the remaining convenience factors—other practical problems, court congestion, familiarity with governing law, and avoidance of conflicts of laws—are neutral. That confirms that the suit should be transferred to NDCA.

1.  There are no distinct practical problems that would counsel against transfer. When the transfer motion was filed in July 2024, this case was in its infancy. It remains in early stages, as the *Markman* hearing is scheduled for May 15, 2025, and fact discovery will close two weeks after that. *See* Appx0583-0584. There was no "inexcusabl[e] delay" here. *TikTok*, 85 F.4th at 362 (citation omitted).

2.  The difficulties from court congestion are neutral. As the district court recognized, "it [is] a clear abuse of discretion to accord this

factor any weight" when there is no need for expedition.  *Google*, 58 F.4th at 1383.  Because there is no evidence that Mullen competes with Samsung in the market, EDTX's slightly faster dispositions have no significance here.  Appx0016; *Google*, 58 F.4th at 1383.

3.     As the parties agreed below, both NDCA and EDTX are well versed in patent law, and there is no prospect for conflicts of laws.  Accordingly, the last two factors are neutral.

## III.   Taken Together, the Convenience Factors Require That This Case Be Transferred to NDCA

NDCA is unquestionably the more convenient forum and the clear "center of gravity" of this action.  *In re DISH Network LLC*, 2021 WL 4911981, at *2 (Fed. Cir. Oct. 21, 2021).  The most important factors, concerning the convenience of witnesses and availability of compulsory process, strongly favor transfer.  The same goes for the local-interest factor.  And the sources-of-proof factor likewise favors transfer.  Thus, "as in other recent cases in which [this Court has] granted mandamus on the issue of transfer, several of the most important factors bearing on the transfer decision strongly favor transfer, and no factor favors retaining the case in the transferor court."  *In re Pandora Media, LLC*, 2021 WL 4772805, at *7 (Fed. Cir. Oct. 13, 2021).

Under those circumstances, the case for transfer should have been straightforward. The witnesses are overwhelmingly in NDCA or Korea; the accused functionalities were developed there as well; and Mullen itself has no connection to EDTX. The district court was able to reach a different conclusion only by disregarding binding precedent establishing how the convenience factors must be applied in similar circumstances; according Google witnesses and evidence far too little significance; and ignoring the fact that none of the significant events giving rise to this litigation occurred in EDTX. Samsung therefore has a clear and indisputable right to a writ of mandamus directing transfer to NDCA.

## CONCLUSION

Samsung respectfully requests that the Court issue a writ of mandamus vacating the district court's order denying Samsung's motion to transfer and directing the district court to transfer this case to NDCA.

DATED:  May 7, 2025          MUNGER, TOLLES & OLSON LLP

By:   /s/ Ginger D. Anders

EVAN MANN                         GINGER D. ANDERS
MUNGER, TOLLES & OLSON             MUNGER, TOLLES & OLSON LLP
LLP                               601 Massachusetts Avenue NW
560 Mission Street                Suite 500 E
27th Floor                        Washington, DC 20001
San Francisco, CA 94105           Telephone: (202) 220-1100
Telephone: (415) 512-4000         Email: ginger.anders@mto.com

*Counsel for Samsung Electronics Co., Ltd.
and Samsung Electronics America, Inc.*

# CERTIFICATE OF COMPLIANCE

1.     This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1).  The body of the petition contains 7,738 words, excluding the portions exempted by rule.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in New Century Schoolbook 14-point font.

DATED:  May 7, 2025                    By:  */s/ Ginger D. Anders*
                                                    Ginger D. Anders

# CERTIFICATE OF SERVICE

I certify that on May 7, 2025, I caused a paper copy of this document to be sent by an express carrier to lead counsel for respondent Mullen Industries LLC at the following address:

> Peter F. Snell
> Mintz, Levin, Cohn, Ferris, Golvsky and Popeo, P.C.
> 919 Third Avenue
> New York, NY 10022
> Telephone: (212) 935-3000

I further certify that I caused courtesy electronic copies of this document to be sent to the following counsel of record for Mullen Industries LLC in the district court:

> Peter F. Snell, pfsnell@mintz.com
> Brad M. Scheller, bmscheller@mintz.com
> Paul S. St. Marie, psstmarie@mintz.com
> Hannah Edge, hmedge@mintz.com
> Robert Sweeney, rcsweeney@mintz.com
> Stafford Davis, sdavis@stafforddavisfirm.com
> Catherine Bartles, cbartles@stafforddavisfirm.com

I further certify that I caused a paper copy of this document to be sent by an express carrier to the presiding district judge at the following address:

> U.S. District Judge Rodney Gilstrap
> Sam B. Hall, Jr. Federal Building and United States Courthouse
> 100 East Houston Street
> Marshall, TX 75670

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  May 7, 2025                    By: _/s/ Ginger D. Anders_
                                                    Ginger D. Anders